PRISCILLA KILBURN, Administratrix, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

Division One, July 11, 1921.

1. **NEGLIGENCE:** Using Crippled Locomotive Engine: Escaping Steam. The evidence showed that the engineer was the superior officer of the fireman; that it was the general railroad practice that when an engine became crippled not to proceed with the train until another was obtained from the nearest terminal shop; that after the train was under way on a regular run, it was discovered that steam in large quantities was escaping from the front end of the low-pressure cylinder on the left (or fireman's) side; that this steam enveloped the cab, and the working place of the fireman between the cab and coal tender; that after the train had run about twenty miles and had stopped at a principal town, the engineer notified the dispatcher that the engine was crippled, but it does not appear that anything further was done towards getting another engine, although at a station thirteen miles away the company maintained terminal shops and a round-house for engines; that it was dangerous to passengers to operate such an engine, and dangerous to the engineer and fireman because escaping steam would prevent them from seeing ahead; and that the train proceeded on schedule time, and the fireman's clothes were thoroughly wet by the escaping steam. *Held,* that these facts tended to show negligence on the part of the defendant; and testimony on the part of the engineer that the engine could be safely run, that the steam did not wet him and that the fireman did not complain of being wet when they took off their working clothes at the end of the run, is of no value in a consideration of a demurrer to the evidence.

2. ———: ———: ———: **Proximate Cause of Pneumonia.** Evidence that the clothing of the fireman of a train was thoroughly wet on November 28th by the steam escaping from the engine; that he removed his overalls in the cab at the end of the run, put on dry outward clothing and went home, and his underwear was then so wet that by twisting it water ran out; that he began coughing on the 28th, and a deep-seated cold followed just after that date until the full development of pneumonia on December 6th, and that on December 13th he died from lobar pneumonia, and testi-

mony of physicians that pneumonia often developes eight or ten days after exposure, where there are prodromal symptoms, and their testimony connecting the exposure to the steam with the pneumonia which caused his death, are evidence from which the jury could find that the superinducing and proximate cause of the pneumonia and his subsequent death therefrom was the negligence of the railroad company in failing to provide a safe engine.

3. ———: **Patent Defect: Crippled Engine.** Whether steam escaping from a running engine and enveloping the cab was so patently dangerous to the fireman, obeying the directions of his superior, the engineer, that a reasonably prudent man would not undertake to work thereon, is a question for the jury, and not a matter of law for the court to determine.

4. ———: ———: **Assumption of Risk.** Where steam was escaping from a running engine and enveloping the cab, and the evidence conflicts as to the duties of the fireman, and the engineer testifies that the engine could have been safely operated, the fireman will not be held, as a matter of law, to have assumed the risk of further operation, after the danger was discovered, but assumption of risk, under such circumstances, is, at most, a question for the jury.

5. ———: **Federal Employers' Liability Act: Invoking Safety Appliance Act: Contributory Negligence.** A plaintiff who, by her petition, plants her action, for the recovery of damages for the killing of her husband while engaged in interstate commerce, upon the Federal Employers' Liability Act, is not precluded from the benefit of the several safety statutes, if they are called into play by the facts. Said act by express reference makes the safety statutes applicable under stated circumstances by providing that "no employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee;" and the Boiler Inspection Act is especially applicable where plaintiff's husband was a fireman and was injured by steam which escaped from the defective engine and enveloped the cab in which he was at work, for Section 2 thereof is made to "apply to and include the entire locomotive and tender and all parts and appurtenances thereof," and under such circumstances contributory negligence is not even a partial defense.

6. ———: ———: ———: **Assumption of Risks: Contributory Negligence: Instructions.** Section 2 of the Boiler Inspection Act made it "unlawful for any common carrier, its officers or agents," to use a locomotive in interstate commerce, unless such engine and

all parts thereof were in proper condition and safe to operate in the service to which put, without unnecessary peril to life or limb, and this section is by express reference made applicable to an action based on the Federal Employers' Liability Act; and where the facts show that the piston rod on the left low-pressure cylinder of the locomotive engine was broken off and the front end of the left cylinder had burst, and from said opening steam escaped when the train was running fast, and enveloped the cab in which plaintiff's husband as fireman was at work, and that the use of said engine was negligently continued in the operation of the train after its defective condition became known to the engineer, who was the fireman's superior, and such defective condition and negligent act were the proximate cause of the fireman's death, the instructions to the jury, in an action by the fireman's widow planted on the Federal Employers' Liability Act, should eliminate the defenses of contributory negligence and assumption of risks.

7. ————: **Measure of Damages: Diminution by Contributory Negligence.** And where, under the Boiler Inspection Act and the facts, contributory negligence is eliminated from a case brought under the Federal Employers' Liability Act, an instruction on the measure of damages which excludes any diminution of damages on account of the alleged contributory negligence of the deceased fireman, is not erroneous.

8. ————: ————: **Conscious Physical Sufferings.** Since the amendment of 1910 to the Federal Employers' Liability Act, the plaintiff may recover for the conscious bodily sufferings of the deceased fireman after his exposure to danger and before his death.

9. **ARGUMENT TO JURY.** Where counsel for plaintiff in their argument to the jury went outside the record and made unduly inflamatory remarks, but the trial court, upon objection, directed the jury not to consider them, and the size of the verdict indicates that they were not influenced thereby, the judgment will not be reversed.

10. ————: **Reading From Medical Book.** Counsel for plaintiff, in cross-examining physicians offered as witnesses by defendant, used several medical books, and got one of the physicians to admit that a certain passage in one of them was correct doctrine and to say that he would adopt it as an expression of his own views, and this passage counsel for plaintiff, in his argument, was reading to the jury when the trial judge stopped him and told him he had no right to read from the book, as it had not been offered in evidence. *Held*, that the conduct of counsel was not reversible error.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Fred S. Hudson* for appellant.

(1) Instruction 1 is erroneous, because it does not properly declare the law. Crecelius v. Ry., 274 Mo. 687; Dowell v. Ry., 190 S. W. 939; Ry. v. Earnest, 229 U. S. 114. (2) Instruction 3 is erroneous, because the jury is told not to take into consideration the question of contributory negligence or the assumption of risk. Seaboard Air Line v. Horton, 233 U. S. 492. (3) Instruction 12 is erroneous, because it does not properly declare the rule relative to damages in a case of this character, and for the further reason that said instruction authorized a recovery for the physical pain and mental suffering of the deceased. Crecelius v. Ry., 223 S. W. 418, pars. 8 and 9. (4) Remarks of counsel in the opening statement relative to the change of venue and also in comment of plaintiff's attorney as to the court's ruling in his argument to the jury, were inflammatory and prejudicial and an appeal to the prejudice and passion of the jury. Neff v. City of Cameron, 213 Mo. 350; Beck v. Ry., 129 Mo. App. 7; Level v. Ry., 196 Mo. 622; Blyston-Spencer v. Ry., 152 Mo. App. 142; Bishop v. Hunt, 24 Mo. App. 377; Terryson v. Ry., 129 S. W. 409; Jackman v. Ry., 206 S. W. 244. (5) The verdict is the result of prejudice and passion and is founded on conjecture, speculation and guess and not upon the testimony in the case. Harper v. Ry., 186 Mo. App. 308; Lahnick v. Ry., 118 Mo. App. 611; Chilty v. Ry., 148 Mo. 64. (6) The verdict is founded upon testimony that shows that it is just as possible and just as probable that deceased contracted pneumonia at some other time and some other place and in some other way than that charged in the petition. Kelly v. Ry., 141

Mo. App. 492; Warner v. Ry., 178 Mo. 125; Root v. Ry., 195 Mo. 348; Smart v. Kansas City, 91 Mo. App. 586. (7) The demurrer to the evidence should have have been sustained. Authorities under Points 5 and 6. (8) It was error for plaintiff's attorney, during the temporary absence of the court from the bench, and during the closing argument, to read to the jury from a book which was not in evidence.

*Platt Hubbell* and *Geo. H. Hubbell* for respondent.

(1) Respondent's instructions numbered 1 and 3 properly declare the law under the Federal Employers Liability Act and the Federal Safety Appliance Act. 8 U. S. Comp. Stat. Ann. (1916), secs. 8631, 8639a, 8612, 8621, 8660, 8659; Moore v. Ry. Co., 268 Mo. 31, 243 U. S. 311, 61 L. Ed. 741; Thornton v. Railroad, 175 N. W. (Iowa) 71; Great No. Ry. Co. v. Donaldson, 246 U. S. 121; Union Pac. Railroad Co. v. Huxoll, 245 U. S. 535, 62 L. Ed. 455; Great No. Railroad Co. v. Otos, 239 U. S. 349; Texas & P. Railroad Co. v. Rigsby, 241 U. S. 33; Cent. Vt. Railroad Co. v. White, 238 U. S. 507, 59 L. Ed. 1433; Richey on Fed. Em. L. & Saf. App. Act, sec. 54, p. 133; Ry. Co. v. Wagner, 241 U. S. 476, 60 L. Ed. 1110; Grand Trunk Railroad v. Lindsay, 233 U. S. 42, 58 L. Ed. 838; Ann. Cas. 1914C, 168; Lancaster & Wight v. Allen, 207 S. W. 986; Salabrin v. Ann Arbor Ry. Co., 160 N. W. 552, 194 Mich. 458; Kippenbrock v. Wabash Ry. Co., 270 Mo. 479, 194 S. W. 50; Kerringan v. Ry. Co., 90 N. W. 976, 86 Minn. 407; Ry. Co. v. Campbell, 241 U. S. 497, 60 L. Ed. 1037; L. & N. Ry. Co. v. Layton, 243 U. S. 617. (2) Respondent's instruction number 12 properly declares the law in this case. 8 Comp. Stat. Ann. (1916), sec. 8665, p. 9439; Ry. Co. v. Scala, 244 U. S. 630; Ry. Co. v. Craft, 237 U. S. 648, 59 L. Ed. 1160; Railroad Co. v. Leslie, 238 U. S. 559, 59 L. Ed. 1478; Calhoun v. Great No. Ry. Co., 156 N. W. (Wis.) 198; Chesapeake & Ohio Ry. Co. v. Carnahan, 241 U. S.

241; Fullerton v. Fordyce, 144 Mo. 529; Doyle v. Ins. Co., 24 L. Ed. 151, 94 U. S. 535; Ry. Co. v. Barrett, 67 Fed. 218. (3) The partial and isolated excerpts from the remarks and argument of counsel are not error. Vawter v. Hultz, 112 Mo. 639; 2 Encyc. P. & P. 756, 757; Gibson v. Ry. Co., 131 N. W. 1057; Dean v. Wabash Ry. Co., 229 Mo. 455; Huckshold v. Ry. Co., 90 Mo. 558: Wendler v. Furn. Co., 165 Mo. 542; People v. Shears, 65 Pac. 295, 133 Cal. 154; State v. Frelinghuysen, 45 N. W. 432, 43 Minn. 265; Wright v. State, 38 S. W. (Tex. Civ. App.) 1004; Pennington v. State, 48 S. W. 507; State v. Court, 225 Mo. 616; Osterfag v. Railroad, 261 Mo. 479; Torreyson v. U. Rys. Co., 246 Mo. 706. (4) The defective cylinder and the wetting of the deceased by reason of the escaping steam therefrom on the trip from Liberty to Laredo was the cause of the pneumonia and the death of Kilburn. Hartzler v. Railroad, 140 Mo. App. 665; Beauchamp v. Min. Co., 15 N. W. 64, 50 Mich. 163, 45 Am. Rep. 30; Seckinger v. Mfg. Co., 129 Mo. 605; MacDonald v. Railroad, 219 Mo. 483; Kuenzel v. St. Louis, 278 Mo. 281; Hinkle v. Railroad Co., 199 S. W. 227; Bannister v. Jevne, 151 Pac. 546, 28 Cal. App. 123; Johnson v. Cont. Cas. Co., 122 Mo. App. 369; Bayne v. Storage Co., 148 N. W. 412, 5 C. C. A. 837; Hastings v. No. Pac. Ry. Co., 53 Fed. 224; 10 Am. Neg. Cas. 689; Nicholl v. Sweet, 144 N. W. 615, 163 Iowa, 683, Ann. Cas. 1916C, 661; Luisi v. Ry. Co., 136 N. W. 322; Murphy v. Railroad, 31 Nev. 120, 101 Pac. 322, 21 Ann. Cas. 502; 1 Thomp. on Negligence, sec. 154; Ry. Co., v. Buck, 96 Ind. 346, 49 Am. Rep. 168; Hanlon v. Ry. Co., 104 Mo. 381; Ry. Co. v. Miller's Admx., 176 Ky. 701, 197 S. W. 403, 18 C. C. A. 825; Ball v. No. Pac. Ry. Co., 173 Pac. 1029; N. Y. Cent. Ry. Co. v. Gapinski, 249 Fed. 346; Tex. & P. Ry. Co. v. Howell, 56 L. Ed. 892, 224 U. S. 577; Maginnis v. Railroad, 268 Mo. 675. (5) It was not improper for respondent's counsel to use the medical book in his argument, as it was only used in connec-

tion with the discussion of the testimony of a witness who had adopted the extract as a part of his testimony. Bradley v. City of Spickardsville, 90 Mo. App. 424; Hayes v. Cont. Cas. Co., 98 Mo. App. 410; State v. Oakes, 202 Mo. 105; State v. Brandenburg, 118 Mo. 187.

GRAVES, J.—Plaintiff is the widow and administratrix of Orley V. Kilburn, deceased. She sues under the Federal Employers' Liability Act of 1908, as amended in 1910. Orley V. Kilburn was in the employ of the defendant as fireman of engines. By his decease he left his wife and four minor children, who were dependent upon him. Defendant operated an interstate railroad, and deceased was running as fireman on an interstate train. His run on this train (a fast passenger train) was from Kansas City, Missouri, to Laredo, Missouri, via Liberty, Missouri. The negligence averred in the petition is as follows:

"After leaving Kansas City, and before arriving at Liberty, Missouri, the piston rod on the left low-pressure cylinder of the locomotive engine of said train was broken off and the front end of the left cylinder was bursted, allowing steam to escape from said cylinder.

"Instead of changing engines at Liberty, Missouri, and instead of procuring another engine, the defendant, acting through its officers, servants and agents, negligently required the deceased, Orley V. Kilburn, as such fireman, to continue to operate said locomotive engine and to serve as the fireman of the same all the way from Liberty, Missouri, to Laredo, Missouri; and the defendant then and there negligently failed to change engines at Liberty; and the defendant negligently failed to change engines between Liberty and Laredo, and the defendant then and there negligently failed to furnish a reasonably safe engine for the use of the deceased as such fireman between Liberty and Laredo; and the defendant then and there negligently failed to

so repair and remedy said defects in said engine, in such a manner as to prevent the escape of large quantities of steam from the left side and cylinder of said engine into the cab thereof; and the defendant then and there, and thereby, negligently required said Orley V. Kilburn to labor and work in a place which was not reasonably safe, and to operate a locomotive engine which was not reasonably safe.

"After the breaking of said piston rod, as aforesaid, said locomotive engine was not in reasonably proper condition, and was not reasonably safe to operate in the service and use to which the same was put; and said locomotive engine could not be so operated without unnecessary peril to life and limb.

"All the way from Liberty, Missouri, to Laredo, Missouri, on said trip and 'run,' large quantities of steam and vapor rolled out of said cylinder and rolled out of said left side of said locomotive engine and passed into the cab of said locomotive engine, whereby said Orley V. Kilburn was required to inhale and breathe said steam and vapor while at work, and whereby the clothing of the said Orley V. Kilburn became thoroughly saturated with said steam and vapor and became thoroughly wet, and whereby the body of the said Orley V. Kilburn became wet and chilled; and by reason of inhaling said steam and vapor, and by reason of his clothing and body becoming saturated and wet and chilled by said steam and vapor, and by reason of said negligence and negligent acts of the defendant, the said Orley V. Kilburn contracted pneumonia and became affected by the disease of pneumonia, as a result of which the said Orley V. Kilburn was totally disabled from doing any kind of labor on December 5th; and was confined to his bed on and after December 6, 1915; and as a result of which exposure to steam and vapor and said disease of pneumonia caused thereby, the said Orley V. Kilburn died at Laredo, Grundy County, Missouri, on December 13, 1915."

By the petition the date of these negligent acts are fixed as either of the date of November 28th or the date of December 2nd, of the year 1915. Damages were asked in the sum of $60,000, and a verdict was obtained for $15,000, upon which the judgment appealed from herein was entered.

By answer the defendant (1) admitted that it was a Wisconsin corporation doing business under the laws of Missouri, (2) admits that Kilburn was on November 28 1915, its fireman on the passenger train described in the petition, known as the Southwest Limited, (3) a plea of contributory negligence, (4) a plea of assumption of risk, and (5) a general denial. The record shows no reply, but the cause was tried as if one had been filed.

The assignment of errors cover several matters, all of which will be noted in the opinion, but the first of these is that the case should not have been submitted to the jury. Pertinent facts will follow under the points made in the course of the opinion.

I. The pertinent facts upon the demurrer may and should be grouped in three classes, (1) those bearing on the negligence of the defendant, (2) those bearing upon the proximate cause of the death of plaintiff's husband, and (3) those bearing upon the matters of contributory negligence and assumption of risk.

(1) It appears that deceased was the fireman on defendant's passenger train running from Kansas City, Missouri, to Chicago, Illinois. At 5:55 p. m. of November 28, 1915, this train left Kansas City for Chicago. The run of deceased and his engineer ended at Laredo, Missouri, some eighty miles beyond Liberty, Missouri, another station on this line of railroad. At Coburg, a station out some five miles from the Union Station in Kansas City, the defendant had and maintained a round-house and machine-shops for its engines on this division of its road. The de-

<div style="margin-left:2em;">Negligent<br/>Acts.</div>

ceased and his engineer left the round-house at 4:30 of that evening, on a large compound engine, numbered 3500. The train left Kansas City at 5:55, but when a mile west of Liberty the piston rod on the lower cylinder on the left side of the engine broke, and a large portion of the front end of the cylinder was blown out. When steam was being used this permitted quantities of low-pressure steam to escape, and if the engine was running fast, this steam would envelop the cab, and working place of deceased between the cab and coal tender. There is conflict as to the amount of the escaping steam, and conflict as to how much would reach the working place of deceased. It is agreed that an engine in this condition required more water and coal, than‧ if the engine had been in shape. The train stopped at Liberty. The plaintiff used as a witness the engineer, one Dider. This witness said:

"Q. You mean steam went out of the front end of the low-pressure cylinder? A. Yes, sir.

"Q. This steam, instead of going out the stack, went out the front end of the low-pressure cylinder? A. Yes, sir.

"Q. Just tell what you did at Liberty, when you arrived at Liberty. A. Well, we arrived at Liberty. I told the fireman, 'We will get water here, and I will go back, and tell them that we broke the left low-pressure piston, and we would go along, and do the best we could'—told them we was ready to quit any time we got an engine to relieve us. We got along so well we practically made running time all the way along."

In fact, with some seventeen minutes of unforeseen stops, the train reached Laredo just nineteen minutes late. Later on the engineer says that he told the operator at Liberty to tell the dispatcher that he had blown out the lower-pressure cylinder on the left side and that he would go on and do the best they could, and for the dispatcher to keep tab upon him. The engineer took out his train without hearing from the dispatcher, or

knowing that the Liberty operator actually sent the message. The train continued at a speed of forty miles per hour, or near that, and landed at Laredo without further incident, other than the escaping steam.

The evidence conflicts as to the duties of the fireman, knowing as he did the condition of his engine, before leaving Liberty. Plaintiff showed that the engineer was the boss of the engine crew and that his directions went. Defendant showed that a fireman could refuse to work and stop the train for a new engine to arrive. It does not appear that any thing further was done toward getting a new engine, either from the shops at Coburg, thirteen miles from Liberty, or at any place after leaving Liberty. These are the facts bearing upon defendant's alleged negligence.

(2) The deceased died on December 13th of lobar pneumonia. It is claimed that on this run from Liberty to Laredo (eighty miles) this escaping steam thoroughly drenched his clothes, which occasioned a deep-seated cold, which on December 6th forced him to quit his work by reason of an attack of lobar pneumonia. He worked continuously from November 28th until the morning of December 6th, when he had to give up his engine (a freight engine upon which he was the engineer) and he returned upon a passing passenger train to his home, where he arrived about noon and shortly thereafter called his family physician, who happened also to be the local doctor at Laredo for defendant.

The evidence for plaintiff tends to show that his clothes were very wet when he reached Laredo on November 28th; that he left his overalls and jumper in his engine and they were wet throughout; that he put on a dry suit in the cab of the engine and went home, but the wife says that his underwear was so wet that by twisting it the water would run out. The evidence further tends to show that he had this cold and coughing from just after the 28th until the full development of pneumonia on December 6th. As is usual the medical

experts and doctors differed as to the probability of the pneumonia having developed from the exposure on the 28th. According to some it could have and often did develop eight to ten days after an exposure, where there were prodromal symptoms, as here. The wife testified to the fact that the cold immediately followed the exposure, and that whilst her husband kept at work, he was languid and on the nights he was at home called for water during the night, and that she had to use applications on his chest. These and other details is the line of facts upon which is predicated proximate cause of death.

(3) The alleged negligence and assumption of risk grew out of what happened at Liberty as deceased and his engineer took out their train from that station.

II. (1) Was there negligence upon the part of the company or its engineer (for he was the *alter ego* in this instance) in running this engine on from Liberty to Laredo, in its then condition? Upon a demurrer to the evidence we need only consider the plaintiff's case from the evidence for the plaintiff. By an experienced engineer, used as an expert, the plaintiff showed that it was a general railroad practice when an engine was crippled as this one was shown to have been crippled, not to proceed from Liberty until a new engine was procured from the nearest terminal shop, which in this case was Coburg, some thirteen miles distance. By the same expert it was shown that it was dangerous both to the passengers, and to the engineer and fireman to operate such an engine—dangerous, because the escaping steam would prevent them from seeing ahead. The same witness, as well as many others, testify that as between the engineer and the fireman, the engineer is the superior officer. This evidence tends to show negligence upon the part of defendant, and it then becomes a matter for the jury to determine the conflict of the evidence, and there was a

Negligence Proved.

conflict in this case. This conflict, however, was determined by the jury against the defendant. There was evidence tending to show that this engine should not have been further run in the condition in which it was in, when it reached Liberty. The engineer said it could be safely run, and he says that the steam did not wet him, nor did deceased complain to him of being wet when they took off their working clothes at Laredo. But this is of no benefit to us on a demurrer to the evidence. The evidence of the plaintiff made a case of negligence upon the part of defendant, in its failure to get a new engine at Liberty, and in running this crippled engine from Liberty to Laredo.

(2)  The evidence of the doctors also connected the exposure to this steam with the pneumonia which produced death. From their evidence the jury could well find that this exposure was the superinducing and proximate cause of the pneumonia. Doctors for the defendant said that the exposure of the 28th was too far away from the actual development of the pneumonia, whilst doctors for plaintiff said that the exposure caused the conditions which later developed the pneumonia, and eight to ten days was frequently required in such cases. It became a question for the jury, under proper instructions.

Proximate Cause.

(3)  Under the expert testimony of plaintiff the engine was so defective as to endanger the fireman and engineer, as well as the traveling public. In this state the condition would have to be so patently dangerous, that a reasonably prudent man would not undertake to work further thereon. Whether it was or not, was at least a question for the jury. We could not say as a matter of law that he was guilty of negligence in obeying the directions of his engineer. So that the demurrer was not well taken on this point.

Patent Danger.

So too we think the matter of assuming the risk was not so patent, as to declare it as a matter of law. The evidence conflicts even as to the duties of the fireman in

such cases. The engineer himself thought, and testified that they could proceed with safety. Assumption of risk, like contributory negligence, was at most a question for the jury. We conclude that the demurrer was not well taken. What we have said, supra, is purely upon the matter of the demurrer to the evidence. Whether there could be either contributory negligence or assumption or risk we discuss later.

*Assumption of Risk.*

III. The further consideration of the case requires a consideration of the pleading of plaintiff. Her petition says:

"The plaintiff is prosecuting this action under the Federal Employer's Liability Act, an Act of Congress approved on April 22, 1908, as amended on April 5, 1910; and this action arises under said Act of Congress."

She has classified her action and is bound thereby. In her brief the Federal Safety Appliance Act and the Federal Boiler Inspection Act are mentioned, but they are not in this case, except as they may be brought in by the Federal Employers' Liability Act. By express terms she plants herself upon the Federal Employers' Liability Act, and the case stated and the trial thereof must be judged by it. So in the discussion of other alleged errors, we shall proceed upon the theory that this is an action under the Federal Employers' Liability Act, and not otherwise. Instructions given and refused must be measured by such act. The relevancy or irrelevancy of evidence must be measured by it. In fact the case must be tried under it. But this does not mean that for given purposes in the trial the Federal Safety Appliance Act and the Federal Boiler Inspection Act may not be considered. This because several sections of the Federal Employers' Liability Act refer to other acts, for given purposes. Thus in Section 3 of the act it is said:

*Safety. Statutes.*

"Provided, That no such employee who may be injured or killed shall be held to have been guilty of con-

tributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

It is clear that the Federal Safety Appliance Act has nothing to do with the case, because the things thereby covered were not the things that went wrong in this case. See this act and all its amendments as Appendix G, 2 Roberts on Federal Liabilities of Carriers, p. 1593; 8 Federal Statutes, Ann. (2 Ed.) p. 1155 et seq. The only reference to a locomotive in this act is as to the brakes thereon and appliance to operate the train brake-system. Of those things no question is made in plaintiff's petition, nor is there a showing in the evidence. It is true that this act bars assumption of risk as a defense, and it might be available in this case did the facts fit the law.

When we reach the Boiler Inspection Act, 8 Fed. Statutes, Ann. (2 Ed.), p. 1200 et seq., we have more trouble. It is an act to promote the safety of both the employees and travelers upon railroads, and by the amendment of March 4, 1915 (effective 6 months thereafter), section two of the original act was made to ''apply to and include the entire locomotive and tender and all parts and appurtenances thereof.'' [38 Stat. L. 1192.]

Section 3 of the Federal Employers' Liability Act, whilst recognizing that contributory negligence is a partial defense for some actions, yet it expressly precludes it as any kind of a defense in the proviso quoted, supra, where the injury was occasioned by the violation ''of any statute enacted for the safety of employees.'' The Boiler Inspection Act was enacted for the safety of employees and is one of the statutes referred to in the Federal Employers' Liability Act. Section 4 of the last named act cuts out the defense of assumption of risk in the same class of cases, and this Section 4, mentioned, supra, makes it clear that those safety statutes should be considered in the trial of cases under the Federal Employ-

ers' Liability Act, because it speaks of actions brought under that act. In other words, the Federal Employers' Liability Act gives the cause of action, and by its terms draws the safety statutes, by whatever name, to it, in the determination of the matters of contributory negligence and assumption of risk. So while plaintiff planted her rights under the Federal Employers' Liability Act she is not precluded from the benefit of the several safety statutes, if they are called into play by the facts. This because the act under which she sues by express reference makes ·the safety statutes applicable under stated circumstances.

IV.   We reach now the complaints of the appellant. It complains of instructions 1 and 3, because by them the defenses of contributory negligence and assumption of risk are eliminated.   Section 2 of the Boiler Inspection Act as amended by the Act of March 4, 1915, made it "unlawful for any common carrier, its *officers or agents*," to use an engine or locomotive in interstate commerce, unless such engine and all parts thereof were in *proper condition* and safe to operate in the service to which it was put, without unnecessary peril to life or limb.   [8 Fed. Statutes, Ann. (2 Ed.), p. 1201, et seq.] The first instruction was predicated upon this statute, and reads:

<span style="margin-left:2em">Contributory Negligence: Assumption of Risk.</span>

"The court instructs the jury that, in moving interstate traffic or interstate commerce, the defendant railway company, acting through its officers, servants and agents, owed to Orley V. Kilburn a duty to exercise ordinary and reasonable care and caution to use, and to provide for his use, a locomotive engine having all its parts in a reasonably proper condition and reasonably safe to operate in the service and use to which the same was put, and which locomotive engine might be so used without unnecessary peril to life and limb.

"A failure to perform this duty, if you believe from the evidence that there was such failure, is negligence as a matter of law.

"And if the jury believe from the evidence that on or about November 28, 1915, deceased, Orley V. Kilburn, was in the employ of the defendant railway company, and was serving as fireman for defendant on a passenger train known as the 'Southwest Limited,' numbered 26; and that said train had started and was on its way from Kansas City, Missouri, to Chicago, Illinois, for the purpose of carrying passengers from Kansas City to Chicago, and to intermediate places; and that then and there deceased Kilburn was on his trip or run from Kansas City to Laredo; and that deceased Kilburn and the defendant were then and there engaged in interstate commerce, as defined in these instructions; and that shortly before arriving at Liberty the lower and low-pressure piston rod broke, and that the front end of the low-pressure cylinder was broken out, on the left-hand side of said engine; and that by running said engine in said broken condition, large, unusual and unreasonable quantities of steam were caused to escape from said cylinder into the left side of the cab and into the gangway between the engine and tender; and if the jury further believe from the evidence that then and there said locomotive engine was not in reasonably proper condition and was not reasonably safe to operate from Liberty to Laredo; and that said locomotive engine could not be so operated without unnecessary peril to life and limb; and if the jury further believe from the evidence that ordinary and reasonable care required that defendant railway company, acting through its officers and engineer in charge of said engine and train, provide and furnish another and different engine to haul said train to Laredo; and if the jury further believe from the evidence that the defendant railway company, acting through and by its engineer, negligently ran said locomotive engine from Liberty to Laredo with

steam from the lower cylinder on the left-hand side passing into said cab and gangway; and if the *jury believe from the evidence that such acts of said engineer were negligent acts, as defined in these instructions;* and if the jury further believe from the evidence that Fireman Kilburn and his clothing were thereby caused to become wet and saturated with said steam and that he became chilled thereby; and that as a result of said wetting, saturation and chilling Fireman Kilburn was therefore caused to contract pneumonia; and if the jury further believe from the evidence that the death of Fireman Kilburn resulted in whole or in part from negligence, if any, of the defendant, as above mentioned, and from such wetting, saturation, chilling and pneumonia, then the plaintiff is entitled to recover, and your verdict must be in favor of the plaintiff.''

The third instruction is predicated upon the first, and reads:

''If the jury believe from the evidence that on or about November 28, 1915, the deceased, Orley V. Kilburn, was in the employ of the defendant railway company, and was serving as fireman for defendant on a passenger train known as the 'Southwest Limited,' numbered 26; and that the deceased Kilburn and the defendant railway company were engaged in interstate commerce, as defined in these instructions; and if the jury further believe from the evidence that, in the way and manner described and stated in the plaintiff's preceding instruction numbered 1, the said Orley V. Kilburn was negligently caused to become wet, and his clothing saturated with steam, as described and stated in the plaintiff's preceding instruction numbered 1; and that, as a result of so becoming wet, and as a result of said saturation of his clothing, said Fireman Kilburn was thereby caused to contract pneumonia; and if the jury further believe from the evidence that the death of said Fireman Kilburn resulted in whole or in part from negligence of the defendant, if any, as mentioned

in the plaintiff's preceding instruction numbered 1, then, under the laws of the Government of the United States, there is no assumption of risk or contributory negligence in this case, and the verdict must be for the plaintiff.''

If, as we have held, the Boiler Inspection Act, so far as the matters of contributory negligence and assumption of risk are concerned, is drawn into the Employers' Liability Act, by the references to safety laws therein, then these instructions, excluding these two defenses, are proper, if the facts of the case bring it within that safety law. This Boiler Act, as amended in 1915, prohibits a locomotive, disabled in any of its parts, to be used in interstate commerce, if such use might occasion peril to life or limb. It is true there is no showing that this engine and all its parts were not in proper condition when it started upon the interstate journey, but the statute does not limit the duty as to condition to the time of starting. It prohibits the use of an engine out of condition in interstate commerce, and it can make no difference when that unfit condition arises. And this prohibition is not only against the carrier, but also against ''its officers and agents.'' The engineer with this engine at Liberty, Missouri, was at least an agent in charge of this engine, if in fact he was not the *alter ego* of the carrier. Under these laws and the facts shown the instructions are well enough. If the engine at Liberty, within thirteen miles of another engine, was not such as should have been used in interstate commerce, under the safety law, supra (the Boiler Inspection Act), then the defenses of contributory negligence and assumption of risk are out of the case.

The use of the disabled engine from Liberty to Laredo was a matter which might have been averted by the engineer, the agent of defendant. To say the least, if by its condition (and concededly it was not in proper condition) there was unnecessary peril to either life or limb, it was a violation of the law to use it, and these

two instructions properly submit the facts, and properly declare the law.

If the statute did not bar the doctrine of assumption of risk in this case, the plaintiff, under the Federal rule as to assumption of risk, might be in close straits for a case. [Seaboard Air Line v. Horton, 233 U. S. l. c. 507 et seq.]

Nor do we think that our views conflict with Norfolk & Western Ry. v. Earnest, 229 U. S. 114, cited by appellant. The case made in this appeal with which we are dealing falls within the proviso of Section 3, and the terms of Section 4 of the Employers' Liability Act, as above stated, but in the Earnest case the opinion, at page 120, says that the proviso of Section 3 was not involved in that case, and the facts of the case so show. In our case it is this proviso of Section 3 and Section 4 of the act, which, when taken with the safety laws, cuts off the defenses of contributory negligence and assumption of risk.

V. Going to the assignment of errors (which always limit the matters for determination here) we find that Instruction 12 is urged as being erroneous. This is the instruction on the measure of damages.

Measure of Damages. It is first contended that it is erroneous, in that it omits to include the diminution of damages by reason of alleged contributory negligence upon the part of the deceased. This contention has been fully answered in the paragraph above. There could be no contributory negligence in the case.

Next it is suggested that it errs in permitting the plaintiff to recover for the conscious bodily sufferings of the deceased after his exposure and before his death. The petition asks for such damages, and since the amendment of the Employers' Liability Act of 1910, the United States Supreme Court has ruled that such damages may be recovered. [St. Louis & Iron Mountain Ry. Co. v. Craft, 237 U. S. 648; K. C. So. Ry. Co. v. Leslie, 238 U. S. 599.]

Since the amendment of 1910, the rulings have been that, if the deceased lingered along for a time before death, and suffered conscious pain, he in his life-time had a right of action for such, and this right of action, by the amendment, was transmitted to the administrator, and was a different right from the pecuniary loss suffered by the dependents. The cases, supra, hold, however, that the damages for both can and should be recovered in the one action. These rulings, and the views we have above expressed on contributory negligence and assumption of risk, answer all the objections to Instruction number 12.

It should be said that the Federal cases rule that where death is instantaneous, or when there is no conscious pain suffered before death, no damages are allowable under the transmitted cause of action. Appellant cites us to our case of Crecelius v. Railway, 223 S. W. (Mo.) l. c. 418. What is there said should be read in the light of the facts. That was a case of instant death, and we announced the Federal rule in such class of cases. If there was a showing of conscious pain between the commission of the tort and the death, as here, then the rule announced in the Craft and Leslie cases, supra, applies.

VI. There are but two other matters here that call for notice. Appellant contends that counsel for plaintiff made improper and prejudicial arguments before the jury. It is true that such counsel did, at times, go beyond the record in the course of their remarks, and made reference to things that should not have been mentioned in the course of legitimate arguments, but upon objection, in such cases, the trial court stopped counsel in such remarks, and several times directed the jury not to consider such arguments. If the verdict had been largely excessive, it might call for a closer scrutiny of some of this argument, but the size of the verdict does not indicate that defendant suf-

Argument to Jury.

fered from an unduly influenced jury, although the argument in places was inflamatory. It really appears from the size of the verdict that the jury was not inflamed by the argument, but followed the admonitions of the learned trial judge to ignore such arguments. The trial court cured the trouble promptly, where it could be cured, and what impressions that might have been left do not seem to have hurt the defendant. We do not condone the method of the arguments made in the case, but do not believe that the record, on this matter, when taken as a whole shows reversible error. Had the verdict been largely excessive we might have had a more serious question on this subject.

Another contention is that counsel for plaintiff, in his closing argument, read from a medical book. It appears that the trial court left his seat for a few moments, and this was done in his absence. The judge returned as defendant's counsel were objecting and promptly stopped plaintiff's counsel, telling him that he had no right to read from the books, as they had not been introduced in evidence. The further facts show that counsel for plaintiff in the course of cross-examining the doctors for defendant had used several medical works, and in cross-examining Dr. Morrow, a witness for the defense, got him to admit that a certain question from one of those books was correct doctrine and to say that he would adopt such expression as his own views on the subject. It was this excerpt that counsel had read when the court admonished him to read no further. The facts all considered we do not feel that the verdict should be disturbed for this conduct of counsel.

Reading From Book.

Finding no substantial or prejudicial error in the trial of the case, the judgment is affirmed. All concur.