# JAMES O'DEA v. H. E. BYRAM AND OTHERS.[1]

December 14, 1928.

No. 27,013.

*Davis & Michel* and *John I. Davis,* for appellant.

*F. W. Root, C. O. Newcomb, A. C. Erdall* and *J. A. Lee,* for respondents.

OLSEN, C.

For convenience we speak of the railway company as the defendant herein.

[1]Reported in 222 N. W. 519.

Plaintiff sued to recover damages for personal injury. A jury returned a verdict in his favor. On defendant's motion for judgment notwithstanding the verdict or for a new trial, the court granted judgment for defendant, and plaintiff appeals therefrom.

Plaintiff was working as a fireman on a locomotive of the defendant railway company at the time he claims to have been injured. Defendant was a carrier engaged in interstate commerce, and plaintiff was employed therein at the time. Plaintiff bases his action on the federal boiler inspection act, 43 St. p. 659; 45 USCA, §§ 22-34. The questions presented are whether there is any evidence reasonably tending to support findings by the jury that there was a violation of this federal law and that such violation was a proximate cause of injury to plaintiff. The federal act requires such a carrier to have and keep its locomotives and all parts thereof and appurtenances thereto in proper condition and safe to operate in the service to which they are put, so that same may be employed in the active service of the carrier without unnecessary peril to life or limb. The act further provides for inspection service as therein set forth.

As held in the recent case of Larsen v. N. P. Ry. Co. 175 Minn. 1, 220 N. W. 159, the act does not make the carrier an insurer, but it imposes upon the carrier the absolute and continuous duty to have its locomotives equipped with parts and appurtenances which are safe when in their normal place, and a violation of the act constitutes negligence which, if found a proximate contributing cause of an employe's injury, renders the carrier liable therefor. Plaintiff has the burden of proving a violation of the act and that injury resulted to him therefrom. He must also prove that he came within the protection of the act, that he was within the class for whose protection the act was intended. The boiler inspection act is to be read and applied with the federal employers liability act. 45 USCA, §§ 51-59. The employe will not be held guilty of contributory negligence or to have assumed the risk if a violation of the act contributed to cause his injury. B. & O. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. ed. 419.

Attached to the front of the fire box of the locomotive, partly below the floor of the cab, was a standard appliance for turning or shaking the fire grates so as to drop and remove ashes and clinkers therefrom. In a general way it resembles and operates on the same principle as appliances in common use for shaking the grates in heating and other steam plants, but is more strongly made and of heavier material, all iron. Its operation is simple, and there is nothing about it likely to get out of order. There is a stub projecting outward and upward some eight inches. A removable iron bar or handle some four and a half feet long is provided, which at one end fits over this stub and is used as a lever to operate the appliance. When the grates are to be shaken or turned, this handle is fitted over the stub and is then pushed back and forth, describing part of an arch at its outer end. This movement turns or shakes the grates. When the operation commences, the handlebar projects out at a small upward angle so that the outer end is some distance above the floor of the cab. The movement consists in grasping the handle at or near its outer end and swinging it upward and forward towards the boiler and then bringing it back. When not in use, the handlebar is removed from the stub and put aside so as to be out of the way. On the side of the stub is a U-shaped clutch or latch, which when the appliance is not used can be tilted so that its arms pass by the sides of the stub and hold it, thereby preventing the grates from turning. When the appliance is to be used, the operator tilts the latch back from the stub to a nearly horizontal position away therefrom. The latch has a large ordinary bolt passing through two extensions at its lower or closed end. The bolt rests in a substantial housing or journal, a part of the frame of the appliance, and moves freely therein. This forms a hinge for the latch.

Plaintiff testified that on the day of the claimed accident the first time he went to shake the grates, when he tried to raise the latch, it bound and would not go clear back; that he then took the handlebar and tapped the latch back to an angle of about 20 degrees away from the stub, left it in that position, shook the grates, and replaced the latch by hand; that the next time he shook the grates,

he found the same condition and went through the same operation; that the third time he went to shake the grates, he found the same condition and tapped the latch back until it bound, and that, while he was then moving the handlebar back and forth and in the act of lifting and moving it up, the latch fell or flopped over against the stub and caught it and suddenly stopped the movement of the handlebar; that this caused his head to snap forward and caused a strain and injury to his neck and head. There was no external evidence of injury.

The trial court found that, upon the evidence presented at the trial, no accident could have happened in the manner testified to by plaintiff. The appliance in question was before that court and was examined and used by witnesses and counsel to illustrate its operation. Plaintiff illustrated before that court his position and the motions made by him at the time of the alleged accident. The appliance has been exhibited here and its operation shown, but we have not the advantage of seeing the plaintiff or observing the illustrations made by him or by other witnesses, matters which could not be shown by the record. Passing that, we fail to find any evidence to go to the jury upon the question of any violation of the boiler inspection act. Plaintiff was unable to point out any defect or fault in the latch or appliance. When he discovered that the latch was binding, he apparently did not consider it important, for he made no special examination and did not inform the engineer. After his injury, he told the engineer and brakeman that the latch dropped and caught the stub or latch lever. There is evidence on behalf of the defendant that the engineer inspected the latch before the end of the run and found nothing wrong; that it was again inspected some time after the arrival at destination and no defect found. There is no claim of failure to inspect before the accident. The only reasonable explanation of the binding of the latch is that particles of coal or dirt may have been dropped thereon and become lodged in the hinge or between an arm of the latch and adjacent frame. The engineer gives this as the reason. From the location of the appliance, it seems probable that this might happen. The appliance was for the use of the fireman, and he controlled and

operated it. Any particles of coal or dirt dropped thereon would apparently come from his work in firing. If the latch bound and was tapped back as far as it would go, it would apparently become wedged and less likely to flop than if loose and laid back to where it normally rested.

The law in question requires that appliances used be "safe to operate * * * without unnecessary peril to life or limb." [43 St. p. 659.] The carrier does not insure safety and cannot reasonably guard against every particle of coal or dirt that may come into an appliance by the work of the operator.

The evidence fails to show any defect in the appliance or any condition thereof rendering it unsafe to operate, within the terms of the federal law; hence the injury to plaintiff cannot be found to have been proximately caused or contributed to by any violation of that law.

Judgment affirmed.