### McCARTHY v. PENNSYLVANIA R. CO.

No. 8830.

Circuit Court of Appeals, Seventh Circuit.

Aug. 7, 1946.

Rehearing Denied Sept. 6, 1946.

SPARKS, Circuit Judge, dissenting.

Solly K. Frankenstein and James P. Murphy, both of Fort Wayne, Ind., for appellant.

F. E. Zollars and Phil M. McNagny, both of Fort Wayne, Ind. (Barrett, Barrett & McNagny, of Fort Wayne, Ind., of counsel), for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff's decedent, McCarthy, was an engineer on the defendant's railroad. The train upon which the decedent was engineer was a passenger train running be-

tween Valparaiso, Indiana, and Chicago, Illinois. On September 16, 1941, the decedent, as engineer, took his run out of Valparaiso, and when he arrived at Indiana Harbor, a distance of twenty-three miles, the pony trucks on the right side of the engine developed a hot box. At Indiana Harbor, the decedent oiled the packing in this hot box. The tower operator at this station observed the hot box and telephoned that fact to the dispatcher's office in the office of the defendant's superintendent in Chicago. He also called the operator at the next station of Whiting, Indiana, and told him to notify McCarthy of the hot box. He gave McCarthy the "hot box signal," which McCarthy acknowledged. At Whiting, Indiana, the conductor gave McCarthy a signal to go to the next station of Colehour, about a mile or more distant, and get another engine, but McCarthy ignored this signal and went on. The agent at Whiting, Indiana, also gave McCarthy the "hot box signal," which he acknowledged, but as soon as the baggage was loaded, he proceeded on to Englewood, Illinois. When the train arrived at Englewood, the hot box attracted the attention of a number of people, two of them calling McCarthy's attention to it. Here the conductor talked to McCarthy and asked him if he didn't want to get another engine at the defendant's shops at 59th Street in Chicago, but McCarthy refused and continued on toward the Union Station in Chicago. At 22nd Street the block operator and switch tender, who knew McCarthy, signaled to him about the hot box, but McCarthy smiled and started up. He had traveled a short distance when the pony truck broke down because of the hot box, the engine turned over, and as a result thereof McCarthy was killed.

The plaintiff as administrator of the estate of McCarthy brought this action under the Safety Appliance (Boiler Inspection Act) and Employers' Liability Acts, 45 U.S.C.A. §§ 23 and 51–60 to recover for the benefit of the mother of decedent, who survived him. The jury returned a verdict for the defendant upon which judgment was entered by the District Court, and from this judgment, this appeal was taken.

The plaintiff in his complaint charged the following acts of negligence on the part of the defendant:

"Par. 6. That said defendant carelessly and negligently allowed and permitted said locomotive to be used in interstate commerce with a defective journal on the front axle of the said engine truck.

"Par. 7. That the said defendant carelessly and negligently permitted said locomotive to be placed in service to operate said train with defects in said locomotive which permitted said journal on the front axle of said engine truck to become overheated.

"Par. 8. That the said defendant carelessly and negligently permitted and ordered said train to be operated with said defective locomotive after it became known to the employees and officials of the said defendant that said journal on said locomotive was overheated."

All the above charges of negligence, proven without question by the evidence, spell out a violation of the Safety Appliance Act.

Only one question is presented, and that is whether the court properly instructed the jury.

The Safety Appliance Act, 45 U.S.C.A. § 23, provides that: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive * * * and all parts and appurtenances thereof are in proper condition and safe to operate * * *."

Section 1 of the Employers' Liability Act, 45 U.S.C.A. § 51, provides: "Every common carrier by railroad while engaging in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, * * *."

■ These two Acts are in pari materia, and must be construed together. If

the defendant in violation of Section 23 of Title 45 U.S.C.A. furnished the plaintiff's decedent with a locomotive that was defective and unsafe to operate, that would be negligence per se and would authorize an action under Section 51 of the same Title. This has long been the construction of these statutes. " * * * If this act is violated, the question of negligence in the general sense of want of care is immaterial. Texas & P. Ry. v. Rigsby, 241 U.S. 43, 36 S.Ct. 482, 60 L.Ed. 874, and cases there cited. But the two statutes are in pari materia, and where the employers' liability act refers to 'any defect or insufficiency, due to its negligence, in its cars, engines, appliances,' etc., it clearly is the legislative intent to treat a violation of the safety appliance act as 'negligence'—what is sometimes called negligence per se." San Antonio & Aransas Pass R. Co. v. Wagner, 241 U.S. 476, 484, 36 S.Ct. 626, 630, 60 L.Ed. 1110.

■ Under the statute the defendant's duty became absolute and continuing to furnish to plaintiff's decedent a locomotive that was in a safe condition to operate in commerce on its railroad without peril to its employees. The duty to exercise ordinary care to provide a safe locomotive, which was the rule at common law, was made absolute by the terms of the Safety Appliance Act. No notice to the defendant, constructive or otherwise, as to the defective, unsafe condition of the locomotive, was necessary to be shown. Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419.

■ However, from Indiana Harbor on to the scene of the accident, the defendant knew that McCarthy was engaged in interstate commerce on its railroad as an engineer upon an engine that was not in proper condition and was unsafe to operate in the service. The undisputed evidence showed that hot boxes are abnormal, defective boxes, and an engine with such a defective box in use in commerce on defendant's railroad is a violation of Section 23, Title 45 U.S.C.A., and is negligence per se. That such a hot box can be extremely dangerous is apparent from what happened in this case. Although the engine was in apparent good condition when it left Valparaiso and the defect became apparent along the way, Section 23 of Title 45 of the statute was violated by the defendant. It makes no difference where the unfit condition arises. Kilburn v. Chicago, Milwaukee & St. Paul R. Co., 289 Mo. 75, 232 S.W. 1017-1023.

■ This section of the Safety Appliance Act imposes upon the carrier the absolute and continuous duty to have its locomotives equipped with parts and appurtenances which are safe when in their normal place. O'Dea v. Byron, 176 Minn. 67, 222 N.W. 519.

■ Since the negligence of the defendant was a violation of the Safety Appliance Act, but plaintiff's decedent could not be deemed to have assumed the risk,[1] no matter how many times the engine was observed by the decedent to be defective and he thereafter continued to use it. Congress has said so. Tiller v. Atlantic Coast R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Baltimore & Ohio R. Co. v. Groeger, supra. The statute also provides that the plaintiff's decedent could not be guilty of contributory negligence where the negligence charged was a violation of the Safety Appliance Act.[2]

So we have a case where the negligence of the defendant, which was a violation of the statute, continued up to the scene of the accident and was in part a contributing cause to the accident, and the plaintiff's decedent was not chargeable with contributory negligence or the assumption of risk because of the defendant's violation of the statute. Thus there never was

[1] " * * * no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C.A. § 54.

[2] " * * * Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C.A. § 53.

a time from Indiana Harbor, Indiana, to the scene of the accident that the defendant was not negligent, and at no time was the decedent chargeable with contributory negligence or assumption of risk, because the statute had relieved the decedent thereof, and his acts were at all times concurring with the defendant's violation of the statute to produce the accident. Under such circumstances, the statute says the defendant is liable for its acts, but the decedent is not liable for his.

In this state of the law, the court instructed as follows:

"This is an action brought under what is known as the Federal Employers' Liability Act. This Act provides, in part, as follows: I shall read the parts that are pertinent: Every common carrier by rail while engaging in commerce between any of the several States, shall be liable in damages to any person suffering injuries while he is employed by such carrier in interstate commerce, or in the case of the death of such employe—for the benefit of the wife or child, or husband, and if none, then to the parents of said decedent, for any injury arising by reason of any defect or insufficiency, due to the negligence in the operation of its cars, engines, appliances, machinery or other equipment. That is the law under which this action is brought.

"In short, it provides that a railroad is liable for the injury or death of one of its employees, if such injury or death has been the result of the negligence of the company, or its employees."

The court then defined ordinary common law negligence and stated that the law of the United States made it unlawful for the defendant to furnish decedent an unfit engine. But the court did not instruct the jury that such unlawful act of the defendant was negligence. The plaintiff excepted to the quoted instruction for the "reason an absolute duty is imposed on the railroad to furnish safe equipment, and even in the absence of any negligence on its part, in the furnishing of defective equipment, the railroad would be liable."

■ The court did not instruct on the issue tendered in the complaint, and undisputed in the evidence, that the defendant's furnishing an unsafe and defective engine to decedent was negligence in and of itself—negligence per se. From the instruction given by the court, the jury were told in effect that the defendant's liability depended upon a showing that defendant did not use due care in furnishing the locomotive to the decedent, while the statute made the "duty absolute and continuing" to furnish a safe locomotive. Baltimore & Ohio R. Co. v. Groeger, supra.

■ The defendant's answer tendered the issue that the sole proximate cause of the accident was the fact that the decedent continued to use the locomotive after he knew of its defective condition and failed to report it as was his duty under the rules. These acts constituted no defense. The decedent's acts were all concurring acts with the act of the defendant in violation of the statute, and were either acts of contributory negligence or assumption of the risk of known danger, from both of which, as we have pointed out, the decedent had been relieved by the statute. "* * * But where, as in this case, plaintiff's contributory negligence and defendant's violation of a provision of the safety appliance act are concurring proximate causes, it is plain that the employers' liability act requires the former to be disregarded." Spokane & Inland Empire R. Co. v. Campbell, 241 U.S. 497, 510, 36 S.Ct. 683, 689, 60 L.Ed. 1125. See also Louisville & Nashville Co. v. Wene, 7 Cir., 202 F. 887, 892.

■ The court further instructed the jury: "On the other hand, (if you find) that the railroad company, knew at all times the things required of it by law, and that it did not violate the law requiring the use of engines in safe condition, even if you find the Defendant was negligent and did not comply with the law requiring the use of engines in good condition, but that such failure to comply with the law was not the cause of the injury to and death of the decedent, but that such injury and death were caused solely by his own acts, independently of any negligence on the part of the Defendant, it would be your duty to find for the Defendant. But, as

I have stated, such acts of negligence on the part of the Plaintiff, if you find such acts of negligence, merely contributed to and were not the sole cause of his death, you should find for the Plaintiff."

This instruction is improper, first because it told the jury in effect that the defendant's liability for violation of the statute depended upon the said violation being the cause of the decedent's death, whereas the statute provides that the defendant shall be liable if the violation caused "in whole or in part" the death of the decedent. 45 U.S.C.A. § 51; Spokane & Inland Empire R. Co. v. Campbell, supra. Secondly, the instruction is improper because it told the jury that the plaintiff could not recover if his decedent was guilty of acts of negligence that solely caused his death. As an abstract proposition of law, that is correct, but there was no evidence of any independent acts of negligence by the decedent that were the sole cause of the accident and his death. The court had instructed on a proposition of law about which there was no evidence.

█ This was bound to confuse and mislead the jury into believing that the concurring acts of the decedent in continuing to use the defective locomotive after he knew it was defective, and not reporting it, might be considered as acts of negligence, for which the decedent might be charged with sole liability for the accident. The giving of such instruction under such circumstances was error. Insurance Co. v. Baring, 20 Wall. 159, 87 U.S. 159, 162, 22 L.Ed. 225; United States v. Breitling, 20 How. 252, 61 U.S. 252, 254, 15 L.Ed. 900; Adams v. Vanderbeck, 148 Ind. 92, 97, 45 N.E. 645, 47 N.E. 24, 62 Am.St.Rep. 497; Fletcher Bros. Co. v. Hyde, 36 Ind.App. 96, 75 N.E. 9; 64 Corpus Juris, § 657; 53 American Jurisprudence, Section 579-580, and numerous cases cited.

The judgment is reversed, and the District Court is directed to grant a new trial.

SPARKS, Circuit Judge (dissenting).

The theory of this complaint is negligence in violation of Boiler Inspection Act and Employers' Liability Act, 45 U.S.C.A. §§ 23 and 51. As stated in the complaint and the majority opinion, there are three separate acts of alleged negligence relied upon: (1) That defendant negligently permitted its locomotive to be placed in service in interstate commerce, with defects in it, which permitted the journal on its front axle to become overheated; (2) that it negligently permitted its locomotive to be used in interstate commerce with a defective journal on its front axle; and (3) that it negligently ordered its locomotive and train to be operated in interstate commerce, after it became known to defendant's employees and officials that the journal of the locomotive was overheated. A journal, as applied to machinery, is that portion of a rotating axle which turns in a bearing.

It is clear that the first act complained of is that defendant furnished decedent with an engine for his use in interstate commerce which was defective at the time he received it and which defect permitted the journal to become overheated. Hence, this charge of negligence is based not on the overheated axle, but on the defect in the mechanism, which plaintiff alleges caused the overheating. This must be true, for in argument before this court he urged with emphasis that if the journal was not defective when it was furnished decedent, it would not have become overheated.

I cannot accept this factual conclusion as true, for it is common knowledge that any metal bearing will become overheated if it is not kept sufficiently oiled, regardless of whether or not it was in perfect condition and properly oiled when the use of it began. This record discloses that a "hot box" may be caused by lack of sufficient oil in the bearing or the presence therein of some hard foreign substance, such as sand or gravel. There is no evidence whatever of the presence in this journal of any hard foreign substance, and there is substantial uncontradicted evidence that this bearing was oiled and in good condition when it left Valparaiso in charge of decedent on the day of the accident.

True, metal bearings may become abnormal and defective if they are continuously subjected to excessive heat which

eventually weakens or destroys some element of the mechanism or its function. Prior to that event it cannot be properly said that the bearing or box was abnormal, or defective, but it would comport with the facts to say that the box or bearing here in issue was being subjected to an abnormal and defective use. Hot boxes on engines and trains are not unusual and they do not always denote a defective mechanism, but they do denote a defective and dangerous condition or use which may result in a defective journal and great damage if not attended to properly.

This case was tried to a jury. Defendant's motion for a peremptory instruction at the close of the evidence was overruled, and the jury returned a general verdict for the defendant. This carried with it a finding that defendant was ·not negligent and that decedent's negligence was the sole cause of the accident. By these findings we are bound, if supported by substantial evidence, unless we can say as a matter of law that defendant was negligent. No one here denies decedent's gross negligence, although the majority opinion states that defendant was negligent because it violated Title 45 U.S.C.A. §§ 23 and 51, which the opinion holds are pari materia. I agree that the two statutes should be construed pari materia, but I am convinced that the defendant did not violate such statutes when considered either separately or in pari materia.

I agree with the analysis of these statutes as set forth in the majority opinion. It says, "If the defendant in violation of Section 23 furnished the plaintiff's decedent with a locomotive that was defective and unsafe to operate, that would be negligence per se and would authorize an action under Section 51 of the same Title." However, the verdict of the jury, based upon uncontradicted evidence, discloses that the engine when furnished decedent by defendant at Valparaiso, was not defective in any manner. Plaintiff's only answer to this finding of the jury is not based on evidence, but rather on the plaintiff's unsupported thesis that if it had not then been defective, the box would not have gotten hot. The jury did not accept this thesis and it is my understanding that my associates do not accept it. Indeed, the majority opinion states that there was no apparent defect at that time, and the uncontradicted evidence discloses positively that there was no such defect at that time. However, the majority opinion states that all the above charges of negligence are proved "without question by the evidence." This is tantamount to saying that when the engine was permitted by defendant to be placed in interstate commerce service by decedent at Valparaiso there was a defect in the journal which caused it to become overheated. It was at Valparaiso that this engine was furnished decedent and received by him for interstate commerce service. The complaint alleges that the defect in the engine then existed which caused the journal to become overheated. I understand that we are agreed that this is an erroneous conclusion of fact, and that the journal or "box" was without defect when it left Valparaiso, notwithstanding the contrary allegation in the complaint, and the statement in the majority opinion that all allegations of the complaint are proved "without question by the evidence." The majority opinion seeks to parry the force of this argument by contending that defendant furnished decedent a defective engine at Indiana Harbor, after he had finished twenty-three miles of his trip to Chicago. Here it was that the engineer and conductor were first informed of the hot box. This confirms my contention that there was no defect in the engine when it left Valparaiso, hence no violation of the statutes up to that time. This fact, of course, did not end defendant's obligations to its employees, including this engineer. During the trip to Chicago it was liable in damages under section 51 for the engineer's injury or death resulting in whole or in part from the *negligence* of any of its officers, agents, or employees by reason of any defect or insufficiency, due to *its negligence,* in its engine.

What was the negligent act of defendant, after the train arrived at Indiana Harbor, which by reason of any defect or insufficiency in the engine due to defendant's negligence, resulted in whole or in part in decedent's death? Clearly it was not the mere fact that the box became hot, but

rather, it was defendant's alleged act in permitting or ordering decedent to use the engine with a hot box from Indiana Harbor to the place of the accident. It was the same engine which had been furnished decedent at Valparaiso. True, it was furnished to decedent for a continuous service, but that act on the part of defendant was fully executed by delivery at Valparaiso, and as admitted by my associates, without negligence of the defendant, and without a violation of either of the statutes on its part.

To create liability under the statutes referred to, it seems clear to me that plaintiff was required to prove the existence of such defect when it was delivered to the engineer at Valparaiso, or if such defect or insufficiency in the engine arose thereafter while in such service, plaintiff was required to prove that decedent's death resulted in whole or in part from defendant's negligence. This follows the precise language of the statutes and I have found no federal decision which has held otherwise.

Of course, under section 23 of the Statute, defendant was prohibited from using or permitting to be used on its line any locomotive unless all its parts and appurtenances were in proper condition and safe to operate, regardless of its condition when leaving Valparaiso. Decedent was employed by defendant to see that these conditions were complied with on the trip to Chicago. He was a locomotive engineer of many years experience with the defendant. He had complete charge of the management and control of this engine, except as he was signaled to start and stop by the conductor. The engineer knew more about the engine's condition and capabilities than any of defendant's employees on that train, and he was the final arbiter in those respects. He was employed for that purpose, and it was his duty, as an employee and the sole present representative of the defendant in those respects, to exercise care proportionate to the danger to be avoided. When he failed to do this he should not be heard to say that the defendant used, or permitted its defective engine to be used by him in violation of the statutes referred to. It was his acts

alone which permitted the fatal act to happen to himself, and it is not contended, nor can it be, that such acts on his part were in the scope, or apparent scope, of his authority. This was not a latent defect in the engine, it was highly patent and extremely hazardous, unless kept under control. The ordinary method of handling a "hot box" is to slacken speed and to oil it on the way, and, if it does not improve, to stop the engine. He never slackened his speed, and he oiled the journal but once.

Valparaiso is 44 miles from Chicago. This train was a local passenger train and there were seventeen stops. This hot box was first noticed by decedent and the conductor at Indiana Harbor, which is 23 miles from Valparaiso. There decedent oiled the journal where the hot box was. He signaled the conductor that "he was O. K., and to go," and the train proceeded to Whiting, a distance of three to three and one-half miles. There the condition was no better, and the conductor signalled decedent to go on to Colouer, about a mile distant, and get another engine. In response thereto decedent gave the "high sign" to go, which means "we will proceed." It further meant that his engine was in proper condition to go.

All signals of the conductor "to go" are required by the rules of defendant to be acknowledged and answered by a sign from the engineer. If things at the engine are in a safe condition to proceed, he answers by what they term as a "high sign" or "O. K." and proceeds; if the engine is not in a safe condition to proceed, the conductor's sign is not answered and the train does not, or should not, move. In other words, the conductor's "go" sign is also an inquiry to the engineer as to the condition of his engine. At every stop between Valparaiso and the point of the accident, an approximate distance of forty-two miles, in which there were about a dozen stops, the engineer answered the conductor's "go" sign by an "O. K." sign. Moreover, he disobeyed the conductor's signal to stop at Colouer and get a new engine. Along the line from Indiana Harbor almost to the point of the accident he was signaled that his engine had a hot

box by various employees of defendant, as was their duty. He acknowledged these warnings, smiled and continued his course. At Englewood, which is at 63rd Street in Chicago, the conductor talked to him while in his cab, and asked him if he wanted an engine at 59th Street. This conductor testified that he said: "We will make it down town. He told me to get on the train, we were going." From the evidence it is clear that the hot box became worse after leaving Indiana Harbor, and decedent knew it, and at Englewood station a number of people were standing near the engine observing the hot box.

The majority opinion relies on the case of Kilburn v. Chicago M. & St. P. R. Co., 289 Mo. 75, 232 S.W. 1017. In that case the lower pressure cylinder on the left side of the engine had blown out while en route on November 28, 1915. As here, the engineer was the boss of the engine crew and his directions were controlling. He directed the train to proceed. Steam was continually escaping from the engine which caused the fireman's clothing to become very wet. From this he contracted pneumonia and died, and his representatives were permitted to recover. It was his duty to follow the order of the engineer and he did so. The engineer was not damaged in any way. He represented the Company, and, in so far as the fireman was concerned, the engineer was acting within the apparent scope of his authority. Of course, as between the engineer and the fireman, the defendant was liable for the acts of the engineer within the apparent scope of his authority, which caused the fireman's death. This would be true in the case at bar if an injury to any person other than the engineer were involved in this case. It would seem unbelievable that the statute could be so unreasonably construed as to permit an engineer, or his representative, to recover under such circumstances where his own defiant conduct is the sole cause of the injury.

The opinion further relies on Baltimore & Ohio R. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419. In that case there was a defective boiler furnished the engineer at the beginning of his trip. It had a latent defect, and it exploded during the

trip, killing the engineer. There was a verdict and judgment for the plaintiff, and the Circuit Court of Appeals affirmed it. It was reversed, however, by the Supreme Court on account of a defective instruction.

It seems to me that neither of these cases supports plaintiff's contention here.

I agree with the majority opinion that when the railroad company violates the Safety Appliance Act, plaintiff's decedent cannot be deemed to have assumed the risk. However, this principle does not come into effect where, as here, the engineer has every knowledge of the defect, which arises after his trip has begun, and he defiantly ignores the obvious dangers and fails to obey the conductor's order and request to get a new engine. In such case, he certainly assumes the risk, not of the defendant's negligence, but of his own, for in that event, the Company has not in any way violated the Safety Appliance Act. The accident happened just below Twenty-Second Street, at least three miles from the last place the conductor asked him to obtain a new engine.

Under these circumstances I think it cannot be said that the death here complained of resulted in whole or in part from the negligence of any of defendant's officers or agents or employees except the gross and defiant negligence of decedent himself, nor did it result by reason of any defect or insufficiency in its engine, which was *due to defendant's negligence.* Neither it, nor any of its officers, had the slightest knowledge of the defect except as the knowledge of the engineer and conductor is imputed to it. Knowledge may sometimes be imputed to another, but under section 51, which is construed in pari materia with section 23, the sole negligence of the engineer should not be imputed to the defendant, where no negligent act of defendant, as set forth in section 51, is shown.

It is not claimed by plaintiff that any of defendant's officers, agents or employees, other than the engineer, and perhaps the conductor, were guilty of negligence which caused or contributed to the second and third alleged acts of negligence, as I have

numbered them. However, it was argued, and is strongly intimated in the majority opinion, that the conductor was negligent in not compelling the engineer to stop and get a new engine, even though the latter had informed the conductor by signal at each stop that his engine was in safe condition to proceed. It is common knowledge that a conductor's position ordinarily is not at the engine; and he and the engineer communicate by signals, and where as here the competency of neither is questioned, they and the defendant have a right to rely on those signals in so far as they are concerned. I think there is no merit in this contention.

The majority opinion further states that, "Only one question is (here) presented, and that is whether the court properly instructed the jury." In view of the uncontradicted evidence, the instructions, when construed as a whole, properly stated the law. I think the case should be affirmed.