**INTERNATIONAL-GREAT NORTHERN RAILROAD COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17575.**

United States Court of Appeals
Fifth Circuit.

June 30, 1959.

Bond Davis, San Antonio, Tex., Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Tex., of counsel, for appellant.

John E. Banks, Asst. U. S. Atty., San Antonio, Tex., Henry L. Hilzinger, Atty., Interstate Commerce Commission, Washington, D. C., Howard C. Walker, Asst. U. S. Atty., San Antonio, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The United States brought a suit against the appellant railroad for penalties under the Safety Appliance Acts, 45 U.S.C.A. §§ 1–16. A judgment was recovered for the United States and the railroad has appealed.

The twelve railway cars here involved were in the railroad's San Fernando Yard at San Antonio, Texas, and there its inspectors found these cars to have defective safety appliances. Bad Order tags, specifying the defects, were attached to the cars. The same defects were thereafter discovered by Government inspectors. The cars were moved by a switching operation from the railroad's San Fernando Yard to its South San Antonio Yard where repairs were made. The South San Antonio Yard is about five miles distant from the San Fernando Yard. Both are within the railroad's San Antonio Yard Limits. It was contended by the Government that by hauling the cars from the one yard to the other, the railroad became subject to the penalties which the statute imposed. The defendant admitted the hauling of the cars with the defective appliances, and that it was physically possible to have made the repairs at the San Fernando Yard. It introduced evidence showing that the San Fernando Yard was extremely busy and that the tracks within it were, for the most part, unusually close together. These facts, the railroad asserted, showed that the railroad could not have repaired the cars at its San Fernando Yard without unreasonable risk to the safety of its employees and

that the moving of the cars to the South San Antonio Yard was necessary in order to make the repairs without undue risk to its employees. Special issues were submitted to the jury, which found as to each car:

(a) That the railroad could have repaired the defective safety appliance in the San Fernando Yard;

(b) That it was not necessary for the railroad to move the car with the defective safety appliance to the South San Antonio Yard in order to repair the defective safety appliance;

(c) That the railroad could not have repaired such defective safety appliance without unreasonable risk to the safety of railroad mechanics and other employees required to repair such defects in the San Fernando Yard; and

(d) That the defendant railroad could not have repaired such defective safety appliances without unreasonable risk to the safety of the railroad mechanics and other employees required to repair such defects except by transporting the defective cars to the South San Antonio Yard.

The railroad moved for judgment and the motion was overruled. The Government moved for judgment and its motion was granted. Appealing from the judgment, the railroad urges upon us the proposition which the district court rejected, that the movement of the cars within the San Antonio Yard Limits from one yard to another being necessary to avoid unreasonable risk to the safety of railroad employees, the penalty provisions were inapplicable.

Prior to 1910 the penalty provision of the Act briefly provided that any common carrier "hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this Act, shall be liable to a penalty of $100 for each and every such violation." 27 Stat. 531, 29 Stat. 85, 45 U.S.C.A. § 6. Such a provision, standing alone, would no doubt have been regarded as a penal statute and as such would have been strictly construed. It was held, though,

that the dominant purpose of the Safety Appliance Act was to protect railway employees and hence the statute was remedial and one which should be liberally construed. Under the original statute, if cars became or were discovered to be defective while in transit between stations or upon sidings where repairs could not be made, such cars could not be moved to a point where repairs could be made without the statutory penalties being incurred. To mitigate against this unqualified prohibition of the statute, the Congress passed the 1910 amendment. See Erie Railroad Co. v. United States, 6 Cir., 1917, 240 F. 28. By this amendment it was

"*Provided* that where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of sections 1–16 of this title; and nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such defective cars contain livestock or 'perishable' freight." Apr. 14, 1910, c. 160, Sec. 4, 36 Stat. 299, 45 U.S. C.A. § 13.

The purpose of the Safety Appliance Act is expressed in its title, "An Act to Promote the Safety of Employees and Travelers upon Railroads \* \* \*." Delk v. St. Louis & San Francisco Railroad Co., 220 U.S. 580, 31 S.Ct. 617, 618, 55 L.Ed. 590. It should be so construed as to accomplish the intended purpose. The Safety Appliance Act is substantially, if not in form, an amendment to the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252. The two acts should be read and applied together. O'Dea v. Byram, 176 Minn. 67, 222 N.W. 519. The Federal Employers' Liability Act imposes upon railroad engaged in interstate commerce the duty of using reasonable care to furnish its employees with a safe place in which to work. Bailey v. Central Vermont Railway, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. Southern Railway Co. v. Neese, 4 Cir., 1954, 216 F.2d 772, reversed on other grounds 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60; Fort Worth & Denver City Ry. Company v. Smith, 5 Cir., 1953, 206 F.2d 667; Williams v. Atlantic Coast Line Railroad Co., 5 Cir., 1951, 190 F.2d 744. Where two related statutes have the common purpose of protecting railway employees against the hazards of their employment, it is a strange construction that subjects an interstate rail carrier to a penalty under one of the statutes by reason of its compliance with the other. The consequence of the judgment is the imposition of a penalty upon the appellant railroad which it could have avoided if it had chosen to require its car repairmen to work on the defective cars in an unsafe place. We do not believe that Congress intended that these complementary statutes should require a railroad to make any such choice of difficulties.

The principle to be applied in construing the 1910 amendment has been framed in this language:

"In getting the right viewpoint for the amendments of 1910, it is further to be remembered that, under the former acts, the conflict between the canons that a penal statute should be strictly construed and a (so-called) remedial statute liberally was resolved in favor of the latter view largely—and, it seems, mainly —in order to give effect to the supposed dominant intent of the law that the employees' right to recover for personal injuries should not be impaired by any relaxation of the restrictions; and this right the 1910 amendments expressly and fully preserve. However we interpret 'nearest available point', * * * this underlying purpose to give the employee an unimpaired right of action is not touched; he may recover, regardless of the fact that the movement to the repair point was perfectly lawful. The rule disappears when its reason does; hence the rule of construing strictly against the railroad the provisions of the act, as that rule was established before 1910, has its force distinctly lessened, at least, as applied to this amendment." Erie Railroad Co. v. United States, supra [240 F. 34].

We think that the "line of railroad" should not be restricted to its right-of-way and trackage between terminals but comprehends spurs, sidings and yards. "Nearest available point where such car can be repaired" means a point where repairs can be made without unreasonable risk to the safety of the employees making such repairs. The construction for which the Government contends would violate the spirit and purpose of the Act.

The Government says that if the San Fernando Yard is an unsafe place for cars to be repaired, as the jury found, then let the railroad make it safe. Perhaps there is inadequate space in this congested urban area to widen the spaces between tracks, perhaps the operation of the railroad required that the making up and breaking up of trains and other switching movements not be discontinued while cars were being repaired. Such inferences might be more easily drawn from the evidence than that the San Fernando Yard could be made a safe place for the repairing of cars.

We reach the conclusion that the district court adopted and applied an erroneous construction of the pertinent provision of the Safety Appliance Act. Its judgment is reversed and judgment is here rendered for the appellant.

Reversed and rendered.